FILED

2013 Oct-30  AM 08:57
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | | |
|---|---|---|
| **THOMAS SANDERS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **1:13-cv-471-AKK** |
| **CAROLYN W. COLVIN,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Thomas Sanders ("Sanders") brings this action pursuant to section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  Doc. 1.  This court finds that the Administrative Law Judge's ("ALJ") decision—which has become the decision of the Commissioner—is supported by substantial evidence, and, therefore, will **AFFIRM** the decision denying benefits.

## I.  Procedural History

Sanders filed his application for a period of disability, disability insurance

benefits, and Supplemental Security Income on April 19, 2011, alleging a
disability onset date of August 1, 2008, due to anxiety, depression, bone spurs in
his neck, problems with his left knee, and arthritis in his left shoulder. (R. 65,
124–32). After the SSA denied his applications, Sanders requested a hearing.  (R.
64–71, 74–75).  At the hearing on August 29, 2012, Sanders was 59 years old with
an eleventh grade education and past relevant work experience as a metal
fabricator. (R. 55, 143, 149).  Sanders has not engaged in substantial gainful
activity since August 1, 2008.  (R. 43).

The ALJ denied Sanders' claims, which became the final decision of the
Commissioner when the Appeals Council refused to grant review. (R. 26–35, 1–3).
Sanders then filed this action pursuant to 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial
evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v.
Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the
correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);
*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g)
and 1383(c) mandate that the Commissioner's "factual findings are conclusive if
supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the

evidence, or substitute its judgment for that of the Commissioner; instead, it must

review the final decision as a whole and determine if the decision is "reasonable

and supported by substantial evidence."  *See id.*  (citing *Bloodsworth v. Heckler*,

703 F.2d 1233, 1239 (11th Cir. 1983)).

　　　Substantial evidence falls somewhere between a scintilla and a

preponderance of evidence; "[i]t is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529

(quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by

substantial evidence, the court must affirm the Commissioner's factual findings

even if the preponderance of the evidence is against the Commissioner's findings.

*See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review

of the ALJ's findings is limited in scope, it notes that the review "does not yield

automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

　　　To qualify for disability benefits, a claimant must show "the inability to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental

impairment is "an impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrated by medically acceptable

clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  Specifically, the Commissioner

must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national
        economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative

answer to any of the above questions leads either to the next question, or, on steps

three and five, to a finding of disability.  A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20

C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can

do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ initially determined that Sanders met the insured status requirements of the Act through December 31, 2013.  (R. 28).  Moving to the first Step, the ALJ found that Sanders had not engaged in substantial gainful activity since August 1, 2008, the alleged onset date, and, therefore, Sanders met Step One.  *Id*.  Next, the ALJ found that Sanders satisfied Step Two because he suffered from the severe impairments of "generalized anxiety disorder with panic attacks, major depression, and alcohol dependence in partial remission." *Id.* The ALJ then proceeded to the next step and found that Sanders failed to satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments."  (R. 29).  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels. He can understand, remember, and carry out multiple instructions for two-hour periods with normal breaks in order to complete an eight-hour day. He can handle occasional changes in the work setting that are gradually introduced and well explained. He can occasionally interact with the public, co-workers, and supervisors, but cannot perform tandem tasks.

(R. 32).  In light of Sanders' RFC, the ALJ determined that Sanders is "unable to perform any past relevant work." (R. 34).  After considering Sanders' age, education, work experience, and RFC, the ALJ determined in Step Five that "there are jobs that exist in significant numbers in the national economy that [Sanders] can perform." *Id.* Consequently, the ALJ found that Sanders "has not been under a disability, as defined in the Social Security Act, from August 1, 2008, through the date of this decision." (R. 35).

## V.  Analysis

The court turns now to Sanders' contentions that the ALJ failed (1) to present a proper hypothetical to the vocational expert that included all his limitations and capabilities and (2) to develop a full and fair record regarding the vocational opportunities available to him.  *See* doc. 10 at 4–10.  The court addresses each contention in turn.

### A.    Alleged failure to provide a proper hypothetical to the vocational expert

Generally, "[i]n order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).  When the ALJ questioned the vocational expert, he posed his

hypothetical question that included the following limitations: "Interaction with the public, co-workers and supervisors would be on no more than an *occasional* basis and there should be no tandem tasks included in that work." (R. 56) (emphasis added). Sanders asserts that the ALJ erred by not specifying that limitations in the hypothetical included "*marked deficits* in his ability to respond appropriately to supervision, co-workers, and work pressures in a work setting," as pronounced by Dr. Robert A. Storjohann following his psychological evaluation of Sanders. (R. 272) (emphasis added). The ALJ's hypothetical question, Sanders alleges, was pulled directly from Dr. Storjohann's report, but the ALJ's use of the word "occasionally" and failure to incorporate the phrase "marked deficits" materially changed Dr. Storjohann's prognosis. Doc. 10 at 6–8. Thus, according to Sanders, the ALJ's hypothetical question did not comprise all of Sanders' impairments and limitations.

While Sanders is correct that the ALJ's hypothetical question and Dr. Storjohann's prognosis are materially different, the ALJ did not form his hypothetical question based solely on Dr. Storjohann's report. Rather, the hypothetical question was based on the totality of the evidence, including several opinions from multiple doctors. (R. 33). In fact, the ALJ specifically noted that "Dr. Storjohann's assessment is not consistent with the totality of the evidence and

[Sanders'] admitted abilities." (R. 31). Specifically, the ALJ found that "Dr. Storjohann appears to incorporate [Sanders'] significant history of alcohol abuse in his assessment and fails to note [Sanders'] deficits in light of his reduced use of alcohol," *id.*, and that Dr. Storjohann's findings that Sanders has marked deficits "in multiple areas are inconsistent with not only [Sanders'] reported activities of daily living but also with Dr. Storjohann's own findings on the mental status examination," (R. 33).

After a review of the record, the ALJ's hypothetical and the vocational expert's testimony reveal that the vocational expert considered Sanders' actual limitations and still determined that jobs exist that Sanders can perform. Therefore, pursuant to *Wilson*, 284 F.3d at 1227, the vocational expert's testimony is substantial evidence supporting the ALJ's finding that Sanders is not disabled.

      B.    <u>Alleged failure to develop a full and fair record regarding the vocational opportunities available to Sanders</u>

Sanders also contends that the ALJ erred by failing to step in and ask questions that should have been asked by the Sanders' attorney when the attorney failed to properly cross examine the vocational expert at the evidentiary hearing. Doc. 10 at 9–10. "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record."

*Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Despite this obligation, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Id.* at 1423 (dealing with an ALJ's enhanced duty to develop the record when a claimant is not represented by counsel at a hearing). Sanders does not offer any details regarding the vocational expert's testimony, or whether the ALJ's alleged failure to step in changed the administrative result. Accordingly, he has not demonstrated prejudice such that this case must be remanded.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Sanders is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

**Done** the 30th day of October, 2013.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE